MARGOT CUTTER (SBN 306789)
*mcutter@cutterlaw.com*
**CUTTER LAW, PC**
401 Watt Ave.
Sacramento, CA 95864
Telephone:  916.290.9400
Facsimile:  916.588.9314

TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone:  310.474.9111
Facsimile:  310.474.8585

*Attorneys for Plaintiff and the Proposed Classes*[1]

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONNA SCHWARTZ, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> POWERSCHOOL HOLDINGS, INC., <br><br> Defendant. | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Joanna Schwartz ("Plaintiff"), individually and on behalf of all others similarly situated ("Class members"), upon personal knowledge of facts pertaining to themselves and on information and belief as to all other matters, by and through

---

[1] Additional counsel listed below with *pro hac vice* applications pending or forthcoming.

CLASS ACTION COMPLAINT

undersigned counsel, brings this Class Action Complaint against Defendant Powerschool Holdings, Inc. ("Powerschool" or "Defendant").

## NATURE OF THE ACTION

1.      Plaintiff brings this class action individually and on behalf of all other individuals who had their sensitive personal information ("Personal Information") disclosed to unauthorized third parties during a data breach compromising Powerschool in December 2024 (the "Data Breach").

## PARTIES

2.      Plaintiff is an adult citizen of the State of Montana and resides in Helena, Montana. Plaintiff is a teacher in the Helena Public Schools who entrusted her Personal Information to Powerschool and is a victim of the Data Breach.

3.      Defendant Powerschool, Inc. is a corporation organized under the laws of the State of Delaware, with a principal place of business located in Folsom, California.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), there are in excess of 100 Class members, the action is a class action in which one or more Class members are citizens of states different from Defendant, and Defendant is not a government entity.

5.      The Court has personal jurisdiction over Defendant because Defendant has a principal office in Folsom, California, operates in California, conducts other significant business in California, and otherwise has sufficient minimum contacts with and intentionally avails itself of the markets in California.

6.      Venue properly lies in this judicial district because, *inter alia,* Powerschool has a principal place of business in this district; Defendant transacts substantial business, has agents, and is otherwise located in this district; and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this judicial district.

# FACTUAL ALLEGATIONS

### A.    Powerschool Collects and Stores Personal Information

7.    Powerschool routinely collects sensitive Personal Information in the process of providing its cloud-based education services and products including, on information and belief, "phone book" information such as names, email addresses, phone numbers, mailing addresses, but also includes highly sensitive information including SSNs, passwords, and other highly sensitive information.

8.    Defendant is and was aware of the sensitive nature of the Personal Information it collects. On its website, it tells users it is committed to protect users' personal information and that it endeavors to align its privacy and security operations to best practices and relevant international regulations.

9.    Plaintiff and the class were required to provide their Personal Information to Powerschool in order to receive services. Powerschool collected and stored Plaintiff and the class's Private Information with the reasonable expectation and mutual understanding that Powerschool would safeguard and protect said information.

### B.    The Data Breach

10.    In December 2024, cybercriminals accessed Defendant's network and accessed the Private Information of Plaintiff and the putative class including "phone book" information such as names, email addresses, phone numbers, mailing addresses, but also includes highly sensitive information including SSNs, passwords, and other highly sensitive information, and in some cases, health-related information.

11.    In early January 2025, Powerschool disclosed the Data Breach.

12.    Plaintiff is one of millions of persons affected by the Data Breach.

### C.    Impact of the Powerschool Data Breach

13.    The actual extent and scope, and the impact, of the Data Breach on Powerschool's customers (or other affiliated persons) remains uncertain. Unfortunately for Plaintiff and Class members, the damage is already done because their sensitive

CLASS ACTION COMPLAINT

Personal Information is confirmed by Powerschool to have been disclosed to unauthorized persons during the Data Breach.

14.    Powerschool knew or should have known that its affected IT systems and/or servers are unsecure and do not meet industry standards for protecting highly sensitive customer Personal Information. On information and belief, Powerschool failed to timely make changes to its data security systems, privacy policies, and its IT systems and servers, exposing its customers' Personal Information to the risk of theft, identity theft, and fraud.

15.    The harm caused to Plaintiff and Class members by the Data Breach has already been suffered. The Data Breach creates a heightened security concern for Plaintiff and Class members because their Private Information was potentially disclosed. Theft of SSNs creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of her SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

16.    Given the highly sensitive nature of SSNs, theft of SSNs in combination with other personally identifying information (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. Per the United States Attorney General, Social Security numbers "can be an identity thief's most valuable piece of consumer information."[2] TIME quotes data security researcher Tom Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have

---

[2] *Fact Sheet: The Work of the President's Identity Theft Task Force*, DEP'T OF JUSTICE, (Sept. 19, 2006),
https://www.justice.gov/archive/opa/pr/2006/September/06_ag_636.html.

CLASS ACTION COMPLAINT

your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[3]

17.     Powerschool had a duty to keep Plaintiff's and Class members' Personal Information confidential and to protect it from unauthorized disclosures. Plaintiff and Class members provided their Personal Information to Powerschool with the understanding that Powerschool would comply with its Privacy Policy and its obligations to keep such information confidential and secure from unauthorized disclosures.

18.     Defendant's data security obligations were particularly important given the substantial increase in data breaches in recent years, which are widely known to the public and to anyone in Powerschool's industry of cloud-based services involving the collection and storage of Personal Information.

**D.     Theft of Personal Information Has Serious Consequences for Victims**

19.     Data breaches are by no means new and they should not be unexpected. Business Insider has noted that "[d]ata breaches are on the rise for all kinds of businesses. . . . Many of them were caused by flaws in . . . systems."[4] It is well known amongst companies that store sensitive personally identifying information that sensitive Personal Information—like SSNs, financial information, tax information, health-related information, etc.—is valuable and frequently targeted by criminals.

20.     These types of attacks should be anticipated by companies that store sensitive and personally identifying information, like Powerschool, and these companies must ensure that data privacy and security practices and protocols are adequate to protect against and prevent known and expected attacks.

---

[3] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (Aug. 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.
[4] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

CLASS ACTION COMPLAINT

21.     Theft of Personal Information is serious. The Federal Trade Commission has warned consumers that identity thieves use Personal Information to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[5]

22.     Indeed, with access to an individual's Personal Information, criminals can do more than simply empty a victim's bank account. They can also commit all manner of fraud, including: obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and SSN to obtain government benefits; obtain lending or lines of credit; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[6]

23.     According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[7]

---

[5] *See*, Federal Trade Commission Consumer Information, *What to Know About Identity Theft*, FEDERAL TRADE COMMISSION https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Jan. 23, 2024).

[6] *See Warning Signs of Identity Theft*, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed Jan. 16, 2025).

[7] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN, (May 21, 2023),

CLASS ACTION COMPLAINT

24.     Personal Information is a valuable property right.[8] The value of sensitive personal information as a commodity is measurable.[9] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[10]

25.     Personal Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web and the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen SSNs, financial information, driver's license numbers, and other Personal Information directly on various illegal websites making the information publicly available, often for a price. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

26.     Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit. Identity thieves use stolen personal

---

https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[8] *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[9] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE.COM (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192.

[10] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD ILIBRARY (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

CLASS ACTION COMPLAINT

information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

27.    Consumers place a high value on the privacy of sensitive data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[11]

28.    There may be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[12]

29.    Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Personal Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

30.    Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[13]

---

[11] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

[12] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 Journal of Systemics, Cybernetics and Informatics 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

[13] *2021 Consumer Aftermath Report*, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/?utm_source=pressrelease&utm_medium=web&utm_campaign=2021AftermathReport.

31.     It is within this context that Plaintiff and all other Class members must now live with the knowledge that their Personal Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

**E.**     **Powerschool Failed to Act in the Face of a Known Risk of a Data Breach**

32.     Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other notable (similar) data breaches, Powerschool failed to take reasonable steps to adequately protect Personal Information, leaving its clients (and potentially others) exposed to risk of fraud and identity theft.

33.     Powerschool is, and at all relevant times has been, aware that the sensitive Personal Information it handles and stores in connection with providing its services is highly sensitive. As a company that collects and stores highly sensitive and identifying information in connection with providing its services, Powerschool is aware of the importance of safeguarding that information and protecting its systems and products from security vulnerabilities.

34.     Powerschool was aware, or should have been aware, of regulatory and industry guidance regarding data security, and was alerted to the risk associated with failing to ensure that Personal Information was adequately secured.

35.     Despite the well-known risks of hackers and cybersecurity intrusions, Defendant failed to employ adequate data security measures in a meaningful way in order to prevent breaches, including the Data Breach.

36.     The security flaws inherent to Defendant's IT systems or servers run afoul of industry best practices and standards. Had Defendant adequately protected and secured its servers or systems, and the sensitive Personal Information stored therein, it could have prevented the Data Breach.

37.     Despite that Powerschool was on notice of the very real possibility of data theft, including through a prior data breach, it still failed to make necessary changes, and

CLASS ACTION COMPLAINT

permitted a massive intrusion to occur that resulted in disclosure of Plaintiff's and other Class members' Personal Information.

38.     Powerschool permitted Class members' Personal Information to be compromised and disclosed by failing to take reasonable steps against an obvious threat.

39.     Industry experts are clear that a data breach is indicative of data security failures. Indeed, industry-leading research and advisory firm Aite Group has identified that: "If your data was stolen through a data breach that means you were somewhere out of compliance" with payment industry data security standards.[14]

40.     As a result of the events detailed herein, Plaintiff and Class members suffered harm and loss of privacy, and will continue to suffer future harm, resulting from the Data Breach, including but not limited to: invasion of privacy; loss of privacy; loss of control over personal information and identities; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and privacy of Personal Information; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized exposure of Personal Information.

41.     Victims of the Data Breach have likely already experienced harms and are subject to an imminent and ongoing risk of harm, including identity theft and fraud.

42.     As a result of Powerschool's failure to ensure that its impacted systems and servers were protected and secured, the Data Breach occurred. As a result of the Data Breach, Plaintiff's and Class members' privacy has been invaded, their Personal Information is now in the hands of unknown third parties, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

---

[14] Lisa Baertlein, *Chipotle Says Hackers Hit Most Restaurants in Data Breach*, REUTERS (May 30, 2017), https://www.reuters.com/article/idUSKBN18M2BY/.

**CLASS ACTION COMPLAINT**

**F.**     **Schwartz's Experience**

43.     Schwartz received a notice of the Data Breach, notifying her that her sensitive information may have been exposed in the Data Breach.

44.     Schwartz provided sensitive information to Powerschool in connection with utilizing its services.

45.     At the time of the Data Breach, Powerschool maintained Schwartz's sensitive information in its systems.

46.     Schwartz is very careful about sharing sensitive Personal Information. She stores any documents containing Personal Information in a safe and secure location. Schwartz has never knowingly transmitted unencrypted sensitive Personal Information over the internet or any other unsecured source.

47.     Schwartz would have sought to avoid providing her Personal Information to Powerschool had she known that such information would not be adequately safeguarded.

48.     Schwartz has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching and verifying the legitimacy of the Data Breach upon receiving the notice and monitoring accounts for any indication of fraudulent activity. Schwartz has spent time dealing with the Data Breach—valuable time she otherwise would have spent on other activities, including, but not limited to, work and/or recreation. This time has been lost forever and cannot be recaptured.

49.     Schwartz suffered actual injury from having Personal Information compromised as a result of the Data Breach, including, but not limited to: (i) invasion of privacy; (ii) theft of Personal Information; (iii) lost or diminished value of Personal Information; (iv) lost time associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to her Personal Information, which: (a) remains available for unauthorized third parties to access and abuse; and (b) remains in Powerschool's possession and is subject to further

unauthorized disclosures so long as Powerschool fails to undertake appropriate and adequate measures to protect the Personal Information.

50.     The Data Breach has caused Schwartz to suffer fear, anxiety, and stress, which has been compounded by the fact that Powerschool has still not fully informed Schwartz of key details about the Data Breach's occurrence.

51.     As a result of the Data Breach, Schwartz anticipates spending considerable time and resources on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. As a result of the Data Breach, Schwartz is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

52.     Schwartz has a continuing interest in ensuring that her Personal Information, which, upon information and belief, remains backed up in Powerschool's possession, is protected and safeguarded from future breaches.

## **CLASS ALLEGATIONS**

53.     Plaintiff brings this action on behalf of herself and the following Class pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> All residents of the United States who were impacted by the Powerschool Data Breach, including all persons who were sent notice by Powerschool that their Personal Information was compromised as a result of the Data Breach.

54.     Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and Court Staff; and (2) Powerschool, its subsidiaries, parent companies, successors, predecessors, and any entity in which Powerschool, or its parents, have a controlling interest, and its current or former officers and directors.

55.     **Numerosity**: While the precise number of Class members has not yet been determined, members of the Classes are so numerous that their individual joinder is impracticable, as the proposed Class appears to include many millions of members who are geographically dispersed.

CLASS ACTION COMPLAINT

56.     **Typicality**: Plaintiff's claims are typical of Class members' claims. Plaintiff and all Class members were injured through Defendant's uniform misconduct, and Plaintiff's claims are identical to the claims of the Class members they seek to represent. Accordingly, Plaintiff's claims are typical of Class members' claims.

57.     **Adequacy**: Plaintiff's interests are aligned with the Class Plaintiff seeks to represent, and Plaintiff has retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiff and undersigned counsel intend to prosecute this action vigorously. The Class's interests are well-represented by Plaintiff and undersigned counsel.

58.     **Superiority**: A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff's and other Class members' claims. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for Class members individually to redress Defendant's wrongdoing effectively. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

59.     **Commonality and Predominance:** The following questions common to all Class members predominate over any potential questions affecting individual Class members:

- whether Defendant engaged in the wrongful conduct alleged herein;
- whether Defendant's data security practices resulted in the disclosure of Plaintiff's and other Class members' Personal Information and the Data Breach;

-13-

CLASS ACTION COMPLAINT

- whether Defendant violated privacy rights and invaded Plaintiff's and Class members' privacy; and

- whether Plaintiff and Class members are entitled to damages, equitable relief, or other relief and, if so, in what amount.

60.    Given that Defendant engaged in a common course of conduct as to Plaintiff and the Classes, similar or identical injuries and common law and statutory violations are involved, and common questions outweigh any potential individual questions.

61.    **Injunctive and Declaratory Relief:** Consistent with Fed. R. Civ. P. 23(b)(2), Defendant, through its conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the class as a whole.

## CAUSES OF ACTION

### COUNT I
### Negligence

62.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

63.    Defendant was entrusted with, stored, and otherwise had access to the Personal Information of Plaintiff and Class members.

64.    Defendant knew, or should have known, of the risks inherent to storing the Personal Information of Plaintiff and Class members, and to not ensuring that its servers and systems, and the Personal Information, were secure. These risks were reasonably foreseeable to Defendant.

65.    Defendant owed duties of care to Plaintiff and Class members whose Personal Information had been entrusted to it.

66.    Defendant breached its duties to Plaintiff and Class members by failing to provide fair, reasonable, or adequate data security. Defendant had a duty to safeguard Plaintiff's and Class members' Personal Information and to ensure that their Personal Information was adequately protected. Defendant breached this duty.

67.     Powerschool's duty of care arises from its knowledge that its customers entrust it with highly sensitive Personal Information that Powerschool is required to, and represents that it will, handle securely. Indeed, on its website, Powerschool commits to data privacy in its Privacy Policy, including safeguarding sensitive Personal Information.

68.     Only Powerschool was in a position to ensure that its systems, servers, and services were sufficient to protect against breaches and the harms that Plaintiff and Class members have now suffered.

69.     A "special relationship" exists between Defendant, on the one hand, and Plaintiff and Class members, on the other hand. Defendant entered into a "special relationship" with Plaintiff and Class members by agreeing to accept, store, and have access to sensitive Personal Information provided by Plaintiff and Class members in connection with the provision of its services.

70.     But for Defendant's wrongful and negligent breach of their duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

71.     Defendant acted with wanton disregard for the security of Plaintiff's and Class members' Personal Information.

72.     The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendant's breach of duties. Defendant knew or should have known it was failing to meet these duties, and that Defendant's breach would cause Plaintiff and Class members to experience the foreseeable harms associated with the exposure of their Personal Information.

73.     As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class members have been harmed and face an imminent and ongoing risk of harm.

74.     As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT II
### Negligence Per Se

75.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

76.     Pursuant to the Federal Trade Commission Act (15 U.S.C. § 45), Powerschool had a duty to provide adequate data security practices in connection with safeguarding Plaintiff's and Class members' Personal Information.

77.     Pursuant to the Federal Trade Commission Act (15 U.S.C. § 45), Powerschool had a duty to provide adequate data security practices to safeguard Plaintiff's and Class members' Personal Information.

78.     Defendant breached its duties to Plaintiff and Class members to safeguard Plaintiff's and Class members' Personal Information under the Federal Trade Commission Act (15 U.S.C. § 45), the Gramm-Leach-Bliley Act (15 U.S.C. §§ 6801, *et seq.*) ("GLBA"), the California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100, *et seq.* ("CCPA"), Cal. Civ. Code §§ 1798.80, *et seq.*, among other statutes, by failing to provide fair, reasonable, or adequate data security in connection with the provision of its services.

79.     Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

80.     But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

81.     The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendant's breach of duties. Defendant knew or should have known that it was failing to meet its duties, and that a breach would cause Plaintiff and Class members to experience the foreseeable harms associated with the exposure of their Personal Information.

82.     As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class members have been harmed and face an imminent and ongoing risk of harm.

CLASS ACTION COMPLAINT

83.    As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT III
## Breach of Implied Contract

84.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

85.    Powerschool provided services to Plaintiff and Class members, or Plaintiff and Class members provided their Personal Information to Powerschool in some other capacity.

86.    In connection with their relationship, Plaintiff and Class members entered into implied contracts with Powerschool.

87.    Pursuant to these implied contracts, Plaintiff and Class members provided Powerschool with their Personal Information. In exchange, Powerschool agreed, among other things: (1) to take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' Personal Information; and (2) to protect Plaintiff's and Class members' Personal Information in compliance with federal and state laws and regulations and industry standards.

88.    The protection of Personal Information was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and Powerschool, on the other hand. Had Plaintiff and Class members known that Powerschool would not adequately protect its customers' Personal Information they would not have done business with Powerschool.

89.    Plaintiff and Class members performed their obligations under the implied contract when they provided Powerschool with their Personal Information.

90.    Necessarily implicit in the agreements between Plaintiff/Class members and Powerschool was Powerschool's obligation to take reasonable steps to secure and safeguard Plaintiff's and Class members' Personal Information.

91.     Powerschool breached its obligations under its implied contracts with Plaintiff and Class members by failing to implement and maintain reasonable security measures to protect their Personal Information.

92.     Powerschool's breach of its obligations of its implied contracts with Plaintiff and Class members directly resulted in the Data Breach.

93.     The damages sustained by Plaintiff and Class members as described above were the direct and proximate result of Powerschool's material breaches of its agreements.

94.     Plaintiff and other Class members were damaged by Powerschool's breach of implied contracts because: (i) they have suffered actual harm or identity theft; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Personal Information was improperly disclosed to unauthorized individuals; (iv)  the confidentiality of their Personal Information has been breached; (v) they were deprived of the value of their Personal Information, for which there is a well-established national and international market; (vi) they were deprived of the benefit of their bargain; and/or (vii) they lost time and money incurred to mitigate and remediate the effects of the breach, including the increased risks of identity theft they face and will continue to face.

**COUNT IV**
**Breach of Fiduciary Duty**

95.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

96.     A relationship existed between Plaintiff and Class members and Defendant in which Plaintiff and Class members put their trust in Defendant to protect the Personal Information of Plaintiff and Class members and Defendant accepted that trust.

97.     Defendant breached the fiduciary duties that they owed to Plaintiff and Class members by failing to act with the utmost good faith, fairness, and honesty, failing to act

with the highest and finest loyalty, and failing to protect the PII of Plaintiff and Class members.

98.    Defendant's breach of fiduciary duty was a legal cause of damage to Plaintiff and Class members.

99.    But for Defendant's breach of fiduciary duty, the damage to Plaintiff and Class members would not have occurred.

100.    Defendant's breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and Class members.

101.    As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff are entitled to and demand actual, consequential, and nominal damages, and injunctive relief.

## COUNT V
## Invasion of Privacy (Intrusion Upon Seclusion)

102.    Plaintiff reallege and incorporate all previous allegations as though fully set forth herein.

103.    Plaintiff and Class members had a reasonable expectation of privacy in the Personal Information that Defendant disclosed without authorization.

104.    By failing to keep Plaintiff's and Class members' Personal Information safe, knowingly employing inadequate data privacy policies and protocols, and disclosing Personal Information to unauthorized parties for unauthorized use, Defendant unlawfully invaded Plaintiff's and Class members' privacy by, *inter alia*:

        a.   intruding into Plaintiff's and Class members' private affairs in a manner that would be highly offensive to a reasonable person; and

        b.   invading Plaintiff's and Class members' privacy by improperly using their Personal Information properly obtained for a specific purpose for another purpose, or disclosing it to some third party;

        c.   failing adequately to secure Personal Information from disclosure to unauthorized persons;

CLASS ACTION COMPLAINT

> d.   enabling the disclosure of Plaintiff's and Class members' Personal Information without consent.

105.   Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class members' position would consider its actions highly offensive.

106.   Defendant knew that its IT systems and servers were vulnerable to data breaches prior to the Data Breach.

107.   Defendant invaded Plaintiff's and Class members' right to privacy and intruded into Plaintiff's and Class members' private affairs by disclosing their Personal Information to unauthorized persons without their informed, voluntary, affirmative, and clear consent.

108.   As a proximate result of such unauthorized disclosures, Plaintiff's and Class members' reasonable expectations of privacy in their Personal Information was unduly frustrated and thwarted. Defendant's conduct amounted to a serious invasion of Plaintiff's and Class members' protected privacy interests.

109.   In failing to protect Plaintiff's and Class members' Personal Information, and in disclosing Plaintiff's and Class members' Personal Information, Defendant acted with malice and oppression and in conscious disregard of Plaintiff's and Class members' rights to have such information kept confidential and private.

110.   Plaintiff seeks injunctive relief on behalf of the Class, restitution, and all other damages available under this Count.

## COUNT VI
## Unjust Enrichment

111.   Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

112.   This claim is pleaded in the alternative to the implied contract claim.

113.   Powerschool has profited and benefited from the Personal Information provided by Plaintiff and Class members to receive services from Powerschool.

114.   Powerschool has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of the misconduct and omissions described herein, Plaintiff and Class members did not receive services of the quality, nature, fitness, or value represented by Powerschool and that reasonable consumers expected.

115.   Powerschool has been unjustly enriched by its withholding of and retention of these benefits, at the expense of Plaintiff and Class members.

116.   Equity and justice militate against permitting Powerschool to retain these profits and benefits.

117.   Plaintiff and Class members suffered injury as a direct and proximate result of Powerschool's unjust enrichment and seek an order directing Powerschool to disgorge these benefits and pay restitution to Plaintiff and Class members.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of the Classes, by and through undersigned counsel, respectfully request that the Court grant the following relief:

A.   Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiff as class representative and undersigned counsel as class counsel;

B.   Award Plaintiff and Class members actual and statutory damages, punitive damages, and monetary damages to the maximum extent allowable;

C.   Award declaratory and injunctive relief as permitted by law or equity to assure that Class members have an effective remedy, including enjoining Defendant from continuing the unlawful practices as set forth above;

D.   Award Plaintiff and Class members pre-judgment and post-judgment interest to the maximum extent allowable;

E.   Award Plaintiff and Class members reasonable attorneys' fees, costs, and expenses, as allowable; and

F.   Award Plaintiff and Class members such other favorable relief as allowable under law or at equity.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: January 16, 2025                    Respectfully submitted,


/s/ *Margot Cutter*
Margot Cutter (SBN 306789)
*mcutter@cutterlaw.com*
**CUTTER LAW, PC**
401 Watt Ave.
Sacramento, CA 95864
Telephone:  916.290.9400
Facsimile:  916.588.9314

Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone:  310.474.9111
Facsimile:  310.474.8585

John Heenan*
*john@lawmontana.com*
**HEENAN & COOK**
1631 Zimmerman Trail
Billings, MT 59102
Telephone: 406.839.9091
(pro hac vice forthcoming)

Raph Graybill*
*raph@graybilllawfirm.com*
**GRAYBILL LAW FIRM**
300 4th Street North
Great Falls, MT 59403
Telephone: 406.452.8566
(pro hac vice forthcoming)

*Attorneys for Plaintiff and the Proposed Class*

*Applications for admission *pro hac vice* forthcoming or pending

-22-

CLASS ACTION COMPLAINT